UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES OTIS SMITH                                       CIVIL ACTION

VERSUS                                                        NO. 06-4095

MARLIN GUSMAN                                         SECTION:  "K"(3)

## ORDER AND REASONS

Plaintiff, James Otis Smith, a state prisoner, filed this *pro se* and *in forma pauperis* complaint

against Orleans Parish Criminal Sheriff Marlin Gusman[1] and an unidentified medical director at the

Orleans Parish Prison.[2]  In this lawsuit, plaintiff claims that he received inadequate medical care

while incarcerated within the Orleans Parish Prison system; additionally, he asserts a claim that he

was not protected from harm in the immediate aftermath of Hurricane Katrina.  The parties have

consented to the jurisdiction of the undersigned United States Magistrate Judge.[3]

---

[1] Gusman was identified in the complaint as "William Guisman."

[2]  The deadline for plaintiff to amend the complaint, including making any amendment necessary
to properly name unnamed defendants, was November 30, 2006.  Rec. Doc. 9.  No such amendments
were made and that deadline has long since passed.  Nevertheless, for the reasons set forth in this
opinion, plaintiff's underlying claims have no merit in any event.

[3] Rec. Doc. 14.

Sheriff Gusman has filed a motion arguing that he is entitled to summary judgment on the medical claim and to judgment on the pleadings on the "failure to protect" claim.[4]   Plaintiff has opposed that motion.[5]

<u>Medical Claims</u>

Based on the allegations in plaintiff's complaint and his opposition to defendant's motion,[6] it is clear that plaintiff is making two claims regarding his medical care.

Plaintiff's first claim is that necessary surgery was unduly delayed.  He alleges that he had a crushed elbow, a broken arm, and a dislocated shoulder at the time he was arrested on January 13, 2004.  He claims that he needed surgery for those injuries; however, his surgery did not take place until June 16, 2005.

Plaintiff's second claim is that he began experiencing a series of complications after the surgery, including losing sixty-six pounds in two weeks and developing a rash over this entire body. When the prison medical department was unable to resolve the complications, plaintiff was transferred to the Medical Center of Louisiana at New Orleans.  Doctors at the hospital determined

---

[4] Rec. Doc. 15.

[5] Rec. Doc. 18.

[6] The United States Fifth Circuit Court of Appeals has held that in a case filed by a *pro se* plaintiff, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." <u>Howard v. King</u>, 707 F.2d 215, 220 (5th Cir. 1983).  Therefore, a *pro se* litigant's supplemental filings that "embellish[] the original complaint's averments" should be considered when ruling on dispositive motions.  <u>Id</u>. Accordingly, plaintiff's opposition is properly considered a part of the complaint in this matter and will be considered in connection with the instant motion.

that plaintiff was having an adverse reaction to Bactrim, an antibiotic prescribed by the prison doctor.

As noted, Gusman argues that he is entitled to summary judgment pursuant to Fed.R.Civ.P. 56 on the claims for inadequate medical care.  The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine  issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted).  The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  A complete failure of proof concerning

an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Id. at 322-23.

The Court has no duty to search the record for evidence to support a party's opposition to summary judgment.  Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."  Id.  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).  "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

As noted, plaintiff asserts two claims for inadequate medical care.  The constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001) (pretrial detainee); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (convicted prisoner).  However, the United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. ... [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for

4

medical judgment.  And, the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks and citations omitted).

Although it is evident that Gusman is also entitled to summary judgment on the medical claims on other grounds,[7] his only contention in his motion is that plaintiff's voluminous medical records, which were submitted in support of the motion, conclusively disprove any deliberate indifference in this case.  The Court agrees with that contention.

---

[7] For example, it is evident that the medical claims against Gusman, the only defendant who has identified and served in this case, fail for lack of his personal involvement in plaintiff's medical care. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation.  This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).  "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).  In this case, plaintiff has made no factual allegations whatsoever of the personal involvement of Marlin Gusman in plaintiff's medical care.  Moreover, the fact that Gusman holds a supervisory position is of no moment.  Under 42 U.S.C. § 1983, a supervisory official is not liable for the actions of his subordinates under any theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability.").

Second, with respect to the claim regarding the delay in surgery, plaintiff alleges that the surgery was performed on June 16, 2005.  The instant lawsuit was filed no later than July 4, 2006, the date plaintiff signed the complaint. See Cooper v. Brookshire, 70 F.3d 377, 378 (5th Cir. 1995) (a § 1983 complaint is considered to have been filed when the prisoner "duly submitted it to prison authorities for forwarding to the clerk of court").  Therefore, in that the complaint was filed more than one year after the surgery was in fact performed, any claim regarding delay in the surgery would appear to be prescribed. See Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998) ("[F]or a § 1983 action, the court looks to the forum state's personal-injury limitations period.  In Louisiana, that period is one year." ); see also Clifford v. Gibbs, 298 F.3d 328, 332 (5th Cir. 2002); La. Civ. Code Ann. art. 3492.

As noted, plaintiff's first claim is that he had to wait approximately seventeen months for surgery for a crushed elbow, a broken arm, and a dislocated shoulder.  However, the medical records reflect that plaintiff began receiving medical care for his injuries almost immediately upon arriving at the Orleans Parish Prison on or about January 13, 2004.  A medical intake screening was performed on January 14, 2004, and an x-ray was ordered and taken within days.  When the x-ray revealed an injury that could not be surgically corrected in-house, plaintiff was referred to the Medical Center of Louisiana at New Orleans ("MCLNO"), where he was seen on January 22, 2004.  At MCLNO, it was noted that he had a fracture and a splint was ordered.  Additionally, surgery was scheduled shortly thereafter; however, MCLNO personnel canceled plaintiff's surgery on several occasions for various reasons,[8] requiring the jail medical personnel to repeatedly request that the surgery be rescheduled and performed.  While plaintiff was waiting for the surgery, he was given pain medication and his arm was placed in a splint, which the records reflect he refused to wear consistently.

In summary, the records reflect that plaintiff was repeatedly seen and treated both in-house and at MCLNO for his orthopedic problems.  Despite the continued efforts by jail medical staff, his surgery was delayed several times by MCLNO personnel for medical and, perhaps, other reasons.  However, such delays on the part of MCLNO were beyond the control of prison officials, and the records are replete with notations indicating that jail staff repeatedly tried to secure a surgery appointment for plaintiff while continuing to treat his injuries and pain by other means.  Based on

---

[8] The reasons included problems clearing plaintiff for surgery due to his various other medical problems, including a heart condition.

6

those uncontroverted medical records, it is clear that plaintiff's orthopedic problems were not met with deliberate indifference.  See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

As noted, plaintiff's second claim concerns the complications arising from his adverse reaction to Bactrim.  Again, the medical records reflect that plaintiff's complications were not ignored and, when they could not be resolved in-house, he was sent to MCLNO for treatment.  To the extent that plaintiff is perhaps claiming that jail medical staff should never have prescribed Bactrim or should have diagnosed and resolved his allergic reaction in-house, those allegations are merely ones of medical malpractice or negligence.  However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."  Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993). In summary, allegations of  malpractice or negligence alone are never sufficient to state a claim for constitutionally inadequate medical care.  Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999).

It is obvious that plaintiff was frustrated by what he perceived to be a lack of quality medical care at the Orleans Parish Prison.  However, a disagreement between an inmate and the medical staff concerning whether certain medical treatment was appropriate generally is not actionable absent exceptional circumstances.  Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).  Additionally, to the extent that plaintiff is simply arguing that he was not given the best medical care available, that is not the constitutional standard.  See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992) (the fact

that medical treatment "may not have been the best money could buy" was insufficient to establish a constitutional violation); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available). Rather, as noted, the applicable test is whether prison officials were *deliberately indifferent* to plaintiff's serious medical needs. Deliberate indifference cannot be inferred from the medical records in evidence. Accordingly, for all of the foregoing reasons, plaintiff's medical claims must be dismissed with prejudice.

<u>"Failure to Protect" Claim</u>

With respect to the "failure to protect" claim, Gusman argues that he is entitled to judgment on pleadings pursuant to Fed.R.Civ.P. 12(c). The United States Fifth Circuit Court of Appeals has held:

> The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). We accept the complaint's well-pleaded facts as true and view them in the light most favorable to plaintiff. The motion to dismiss should not be granted unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint.

Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain." Brittan Communications Intern. Corp. v. Southwestern Bell Telephone Co., 313 F.3d 899, 904 (5th Cir. 2002).

With respect to this claim, plaintiff states that in the immediate aftermath of Hurricane Katrina he was left without access to medical care, lights, telephone, drinking water, or food. He alleges that he suffered nerve damage as a result of the contaminated flood waters.

In his motion, Gusman argues that this claim must be dismissed because the complaint fails to allege that he was personally involved in the incidents giving rise to the claim.  Gusman alternatively argues that the claim should also be dismissed because it cannot be shown that he acted with deliberate indifference.

As Gusman notes, this lawsuit is one of many filed by prisoners against Orleans Parish Prison system officials regarding the conditions after Hurricane Katrina.  According to what is available on Westlaw, thirteen such cases have now been decided on the merits.[9]  In each of those cases, the claims against the jail officials were dismissed by the Court either *sua sponte* or on motions pursuant Fed.R.Civ.P. 12(c):  Kennedy v. Gusman, Civ. Action No. 06-5274, 2007 WL 782192 (E.D. La. Mar. 13, 2007); Wright v. Gusman, Civ. Action No. 06-5768, 2007 WL 519159 (E.D. La. Feb. 15, 2007); Deselles v. Gusman, Civ. Action No. 06-4136, 2007 WL 121833 (E.D. La. Jan. 11, 2007); Hill v. Gusman, Civ. Action No. 06-527, 2006 WL 3760454 (E.D. La. Dec. 18, 2006); Holmes v. Gusman, Civ. Action No. 06-3245, 2006 WL 3469555 (E.D. La. Nov. 28, 2006); Dean v. Gusman, Civ. Action No. 06-3243, 2006 WL 3469558 (E.D. La. Nov. 28, 2006); Lopez v. Gusman, Civ. Action No. 06-3048, 2006 WL 3469559 (E.D. La. Nov. 28, 2006); Bright v. Gusman, Civ. Action No. 06-2782, 2006 WL 3469560 (E.D. La. Nov. 28, 2006); Tate v. Gusman, 459 F.Supp.2d 519 (E.D. La. 2006); Galo v. Blanco, Civ. Action No. 06-4290, 2006 WL 2860851 (E.D. La. Oct. 4, 2006); Charles v. Gusman, Civ. Action No. 06-53, 2006 WL 2604613 (E.D. La. Sept. 6, 2006); Hayes v. Gusman, Civ. Action No. 06-504, 2006 WL 1985464 (E.D. La. June 22, 2006);

---

[9]  A number of other cases were dismissed on grounds unrelated to the merits, such as the failure of the plaintiffs to prosecute their claims.

Gauff v. Gusman, Civ. Action No. 06-842, 2006 WL 2460753 (E.D. La. June 12, 2006) (Roby, M.J.), adopted, 2006 WL 2468771 (E.D. La. Aug. 21, 2006) (Engelhardt, J.).

As noted, Gusman argues in his motion that the claims against him must be dismissed because the complaint fails to allege that he was personally involved in subjecting plaintiff to the conditions about which he complains. It was, in fact, on that basis that the majority of the reported cases were dismissed. See Kennedy, 2007 WL 782192, at *2; Wright, 2007 WL 519159, at *2; Deselles, 2007 WL 121833, at *4; Hill, 2006 WL 3760454, at *3; Holmes, 2006 WL 3469555, at *2-3; Dean, 2006 WL 3469558, at *3; Lopez, 2006 WL 3469559, at *3; Bright, 2006 WL 3469560, at *3-4; Tate, 459 F. Supp.2d at 523; Charles, 2006 WL 2604613, at *4-5; Hayes, 2006 WL 1985464, at *2-3; Gauff, 2006 WL 2460753, at *3. This Court likewise finds that plaintiff's claims in the instant case must be dismissed on that same basis.

As previously noted in this opinion, "[p]laintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusory assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).[10] "Personal involvement is an essential element of a civil rights cause of action."

---

[10] Plaintiff does not specify in his complaint whether he is suing Gusman in his individual or official capacity. Gusman has assumed that he is being sued in his individual capacity, and this Court is operating under that same assumption. However, if plaintiff meant to assert an official-capacity claim, that claim would clearly fail for the following reasons.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Gusman would in reality be a claim against the local governmental body itself. However, in order to hold a local governmental body accountable for a constitutional violation, a plaintiff must allege that (1) an employee of the local

Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).  In this case, plaintiff does not allege that Gusman personally subjected him to the conditions about which he now complains.  Moreover, an official cannot be held liable pursuant 42 U.S.C. § 1983 under any theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability.").

As also noted, Gusman alternatively argues in his motion that, even if his personal involvement could be shown, the claims against him still should be dismissed because it cannot be shown that he acted with deliberate indifference.  In the majority of the reported cases, the judges also reached that conclusion.  See Kennedy, 2007 WL 782192, at *2-3; Wright, 2007 WL 519159, at *2-3; Deselles, 2007 WL 121833, at *5; Hill, 2006 WL 3760454, at *3-4; Holmes, 2006 WL 3469555, at *3-4; Lopez, 2006 WL 3469559, at *4; Tate, 459 F. Supp.2d at 523-24; Charles, 2006 WL 2604613, at *5; Hayes, 2006 WL 1985464, at *3; Gauff, 2006 WL 2460753, at *3.  For the following reasons, the undersigned likewise reaches that conclusion in this case.

Plaintiff essentially claims that Gusman failed to take adequate precautions to protect plaintiff from the hurricane and its aftermath.  However, "[t]o prevail on a section 1983 failure to protect claim, the prisoner must demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for

---

governmental body violated plaintiff's clearly established constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a policy or custom adopted or maintained by the local governmental body with objective deliberate indifference.  See Olabisiomotosho v. City of Houston, 185 F.3d 521, 528-29 (5th Cir. 1999).  Plaintiff does not allege that the purported constitutional violations in this case resulted from an official policy or custom.

protection." <u>Jones v. Greninger</u>, 188 F.3d 322, 326 (5th Cir. 1999) (internal quotation marks omitted).  Again, the United States Fifth Circuit Court of Appeals has held:

> An official is deliberately indifferent when he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Johnson v. Johnson</u>, 385 F.3d 503, 524 (5th Cir. 2004) (quotation marks omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997); <u>see also</u> <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999).

Plaintiff cannot show that Gusman acted with deliberate indifference.  Even plaintiff himself does not allege that the conditions about which he complains were imposed on the inmates as a form of punishment or resulted from any malevolent intent on Gusman's part; rather, the conditions were simply the unfortunate result of an act of nature which wrought devastation throughout this region. During the time at issue, virtually all of this area's citizens, incarcerated and free persons alike, were forced to endure hardships and unpleasant conditions.

The fact that an argument could perhaps be made that Gusman should have taken more effective precautions to prepare for the hurricane and its aftermath does not mean that he intentionally violated the inmates' rights by failing to do so.  Rather, at best, plaintiff could show only that Gusman was negligent in that regard.  However, it is clear that "deliberate indifference cannot be inferred merely from *a negligent or even a grossly negligent* response to a substantial risk of serious harm." <u>Thompson v. Upshur County, Texas</u>, 245 F.3d 447, 459 (5th Cir. 2001) (emphasis added).  Negligence claims simply are not actionable under 42 U.S.C. § 1983.  <u>Eason v. Thaler</u>, 73

12

F.3d 1322, 1329 n.3 (5th Cir. 1996) ("[N]egligence is not a theory for which liability may be imposed

under section 1983."); see also Baker v. McCollan, 443 U.S. 137, 146 (1979) ("Section 1983

imposes liability for violations of rights protected by the Constitution, not for violations of duties

of care arising out of tort law."); Nesmith v. Taylor, 715 F.2d 194, 195 (5th Cir. 1983) ("It is

fundamental to our federal jurisprudence that state law tort claims are not actionable under federal

law; a plaintiff under section 1983 must show deprivation of a federal right.").

Accordingly,

**IT IS ORDERED** that Sheriff Gusman's motion, Rec. Doc. 15, is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's claims are **DISMISSED WITH
PREJUDICE**.

New Orleans, Louisiana, this twenty-third day of March, 2007.

**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**

13